J-S30009-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | | |
|---|---|---|---|
| H.V. | : | IN THE SUPERIOR COURT OF | |
| | : | PENNSYLVANIA | |
| Appellant | : | | |
| | : | | |
| | : | | |
| | : | | |
| v. | : | | |
| | : | | |
| | : | | |
| J.V.-L. | : | No. 757 MDA 2021 | |

Appeal from the Order Entered May 12, 2021
In the Court of Common Pleas of Lancaster County Civil Division at
No(s):  CI-20-05334

BEFORE:   BENDER, P.J.E., McCAFFERY, J., and COLINS, J.[*]

MEMORANDUM BY BENDER, P.J.E.:                    **FILED OCTOBER 01, 2021**

H.V. (Father) appeals from the custody order, entered on May 12, 2021, that awarded Father and J.V.-L. (Mother) shared legal custody of the parties' two children, E.S.V. (born in August of 2016) and E.I.V. (born in May of 2018) (Children).  The order also sets forth the physical custody arrangements, granting Mother primary physical custody of Children with Father having partial physical custody of Children every other weekend and every Wednesday from after school/day care until 8 P.M.  Following our review, we affirm.

The relevant scope and standard of review in custody matters are as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion.  We must accept findings

_____

[*] Retired Senior Judge assigned to the Superior Court.

of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*V.B. v. J.E.B.*, 55 A.3d 1193, 1197 (Pa. Super. 2012) (citations omitted).

Furthermore, we note that:

> The discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.
>
> *Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (quoting *Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa. Super. 2004)).

*A.H. v. C.M.*, 58 A.3d 823, 825 (Pa. Super. 2012). Moreover, "[w]hen a trial court orders a form of custody, the best interest of the child is paramount."

*S.W.D. v. S.A.R.*, 96 A.3d 396, 400 (Pa. Super. 2014) (citation omitted).

Father raises the following two issues for our review:

1. Whether the trial court abused its discretion and ignored the best interests of [] [C]hildren when the [c]ourt awarded primary physical custody to [] Mother who admitted having a drug addiction, and when she had previously lied to the [c]ourt about her sobriety, had exposed [] [C]hildren to her supplier and drove with them visibly intoxicated, and failed to produce

any evidence of her current sobriety, other than her self-serving statements, at trial?

2. Whether the trial court abused its discretion and ignored the best interests of [] [C]hildren when the [c]ourt judged Father's ability to safeguard those interests based on his shortcomings as a husband and based on the [c]ourt's mischaracterization of the testimony of both Mother and Father to that effect?

Father's brief at 14.[1]

In its opinion filed following the custody hearing held on May 3, 2021, the trial court set forth the factual and procedural history of the case. *See* Trial Court Opinion and Order, 5/12/2021. That opinion also considered the custody factors set forth in 23 Pa.C.S. § 5328 and discussed the facts it relied upon and its reasons for awarding shared legal custody and directing that Mother was to have primary physical custody with Father having partial physical custody of Children. *Id.* Subsequent to Father's appeal, the trial court filed an opinion to comply with Pa.R.A.P. 1925(a), providing references to the standard of review and analyzing the issues raised by Father. *See* Trial Court 1925(a) Opinion, 7/7/2021.

Essentially, Father's arguments are requesting that this Court re-find facts and re-weigh the evidence presented. However, our standard of review

---

[1] We note that Father's brief does not comply with Pa.R.A.P. 2119(a), which requires that the argument section of the brief "shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part—in distinctive type or in type distinctively displayed—the particular point treated therein…." Despite this error, we are not hampered in our ability to conduct meaningful appellate review.

does not permit us to function in this manner. Rather, our standard of review requires that we "accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations." **C.R.F., III v. S.E.F.**, 45 A.3d 441, 443 (Pa. Super. 2012). Moreover, we "may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court." **E.D. v. M.P.**, 33 A.3d 73, 76 (Pa. Super. 2011). We do not conclude that that is the situation here. The trial court's findings are based on competent evidence contained in the record and its conclusions are not unreasonable.

We have reviewed the certified record, the parties' briefs, the applicable law, and the thorough, well-reasoned opinions authored by the Honorable Jeffrey A. Conrad of the Court of Common Pleas of Lancaster County, dated May 12, 2021, and July 7, 2021. We conclude that Judge Conrad's opinions properly dispose of the issues presented by Father in this appeal. Accordingly, we adopt the trial court's opinions as our own and affirm the custody order on that basis.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/01/2021

- 4 -

ENTERED AND FILED
PROTHONOTARY'S OFFICE
LANCASTER, PA
\*\*\*Electronically Filed\*\*\*\*
May 12 2021 12:35 PM

IIN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CIVIL ACTION - CUSTODY

*H. V.*

        **Plaintiff,**

v.
    *J. V.-L.*

        **Defendant.**

:
:
:
:
:
:
:
:

**No. CI-20-05334**

### OPINION

This case is before the Court on the Complaint for Custody filed by Plaintiff,

*H. V.*        *H. V. L.*

, a/k/a ("Father"). After a hearing held on May 3, 2021, at

*J. V.-L.*

which both Father and Defendant, ("Mother"), were represented by

counsel, this matter is ripe for review.

### I. PROCEDURAL HISTORY

This case commenced when Father filed a Complaint for Custody on August 10, 2020.

Following a family business court presentation on August 12, 2020, a temporary order was

entered, and a custody conciliation conference was scheduled for September 15, 2020. No

agreement was reached between the parties on September 15, 2020 and a hearing was scheduled

for December 21, 2020. On September 30, 2020, Father filed a Petition for Special Relief. This

Court denied Father's petition following a family business court presentation on October 2,

2020. On October 16, 2020, the Court granted Father's uncontested motion for a continuance of

the hearing and waiver of custody case time requirements. The hearing was rescheduled for

January 12, 2021. On January 8, 2021, the Court granted Father's uncontested motion for a

continuance of the hearing and waiver of custody case time requirements. The hearing was

rescheduled for May 3, 2021. The Court held a hearing on that date, and this opinion follows.

NOTICE OF ENTRY OF ORDER OR DECREE
PURSUANT TO PA R.C.P. NO. 236
NOTIFICATION - THE ATTACHED DOCUMENT
HAS BEEN FILED IN THIS CASE
PROTHONOTARY OF LANCASTER CO., PA
May 12 2021 12:35 PM

I

A

## II. STATEMENT OF FACTS

The parties have two children: E.S.V. (DOB 8/●/2016) and E.I.V. (DOB 5/●/2018) ("Children"). Due to their tender age and by the agreement of the parties, the Court did not interview the Children.

Father rents a house in Lancaster, Pennsylvania and resides with his girlfriend ▓▓▓▓▓ *V. V.*, ▓▓▓▓▓, and their child born October ●, 2020. Father and Mother are still currently married, and no divorce action has been filed, but they separated in November 2019. Both Father and Ms. *V. V.* ▓▓▓▓▓, Father and Mother's former babysitter, testified that their romantic relationship began in December 2019. The Children in this matter share a bedroom when they reside with Father. Father works fulltime for Dart Container from 8:30am until 3:30pm Monday through Friday and occasionally on Saturdays when he does not have custody of the Children.

Mother rents a three (3) bedroom home in Lancaster, Pennsylvania. The Children each have their own bedroom when they reside with Mother. Mother works fulltime for Great Clips from 8:30am until 6:00pm four (4) days per week and every other Saturday when she does not have custody of the Children.

The parties currently share legal custody. Pursuant to a temporary order dated August 12, 2020, they currently share physical custody on an alternating 2-2-3 schedule.

## III. STANDARD OF REVIEW

"[T]he paramount concern in child custody proceedings is the best interest of the child." *Moore v. Moore*, 634 A.2d 163, 169 (Pa. 1993). In making the custody determination, the court's guiding principle is the best interests of the child, in accordance with the factors set forth in 23 Pa.C.S. § 5328 with weighted consideration given to those factors that affect the safety of the child. The test as to the best interests of the children when two parents are involved is evaluated

2

on a scale that is initially weighed equally as to each parent. *Sawko v. Sawko*, 625 A.2d 692, 695 (Pa. Super. 1993). In a custody action, the particular circumstances of the case must be considered, and each case is to be decided on its own individual facts. *N.H.M. v. P.O.T.*, 947 A.2d 1268, 1273 (Pa. Super. 2008).

## IV.  DISCUSSION

In consideration of the sixteen (16) specifically enumerated factors set forth in 23 Pa.C.S. § 5328(a) as they relate to the Children's best interests in this case, based on the evidence presented by the parties, the Court finds:

1. **Which party is more likely to encourage and permit frequent and continuing contact between the child and another party?**

   Father withheld the Children from Mother following Mother's mental health commitment. Mother was suffering from depression following the revelation that Father was involved in a relationship with Ms. ███████████, the parties' former babysitter and the further shocking revelation that Ms. ██████ was pregnant to Father. At the time, Mother was still suffering from an addiction to prescription medication, so Father's actions were not without justification.

   Mother is doing better now and presents to the Court as drug-free. She is maintaining fulltime employment, presents to the Court as alert, sharp, and appropriate. She claims to have remained drug-free since September 2020.

   Both parties recognize the importance of the other party in the Children's lives.

   This factor does not favor either party.

2. **The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.**

   There is no evidence of past physical abuse. Additionally, Father withdrew and discontinued his PFA Petition filed against Mother at docket CI-20-06060 at the May 3, 2021 custody hearing.

   Father presented evidence of Mother's drug use and evidence to support that she operated a motor vehicle with the Children as passengers. Equally appalling to the

3

Court was Father permitting his Children to be the passengers in the vehicle driven by Mother and failing to safeguard the Children.

Father also presented evidence that Mother was using drugs from the time of his exodus from the family home in November 2019 until the filing of his custody action in August 2020 following Mother's stay in a mental health facility. Father took no steps to remove the Children from Mother's care despite his knowledge of Mother's history with addiction.

Father has a 2011 guilty plea for Statutory Sexual Assault and Corruption of Minors. He completed probation and will finish his Megan's law registration requirements in 2021. The Court does not find him a present risk of harm to the Children.

This factor does not favor either party.

**2.1 The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).**

There was an investigation performed by Lancaster County Children and Youth Services. The report was deemed unfounded.

This factor does not favor either party.

**3. The parental duties performed by each party on behalf of the child.**
Despite Mother's addiction to prescription medication, Mother performed the bulk of the parental duties. Mother ensured the Children visited the doctors, took care of a home, fed, bathed, and cared for the Children.

Prior to their separation, Father cleaned their home while Mother was largely responsible for other parental duties. Father occasionally visited the Children from November 2019 until filing his complaint on August 10, 2020. He also took the Children to one (1) doctor's visit. Since filing for custody, Father engages more in parental duties including putting the Children to bed, cooking, and caring for the Children when they are sick. Mother still primarily handles all medical and dental visits.

This factor favors Mother.

**4. The need for stability and continuity in the child's education, family life, and community life.**

Similar to the parental duties analysis, despite Mother's addition to prescription pain medication, she maintained stable housing and continued to care for the Children. She has ensured access to daycare, handles transportation to daycare, and prepared the oldest Child for his upcoming transition to kindergarten. Mother has tried to transition the oldest Child to underwear as opposed to toddler "pull-up" diapers, but Father does

4

not make the effort to assist. Since filing his custody complaint in August 2020, Father has assumed a more active role in the rearing of the Children.

The Court finds that Mother is better able to provide stability and continuity in the Children's lives.

5. **The availability of extended family.**
On Father's side, the Children have local family including their paternal great grandmother and two (2) uncles. Father does not have any communication with his mother.

The Children's maternal grandmother resides approximately fifteen (15) minutes from Mother's home. Since she is retired, she assists Mother with daycare transportation. The Children also see their maternal grandfather regularly and less frequently see two (2) uncles on Mother's side of the family who reside in Philadelphia and Harrisburg as well as several cousins.

This factor does not favor either party.

6. **The child's sibling relationships.**
From the testimony presented by both parties, the Children get along well as siblings.

Mother has no additional children. In a confusing turn of events for the Children, their babysitter, Ms. ▓▓▓▓, now lives with their Father and had a child with their Father. The Children have a playful relationship with their infant half-brother.

7. **The well-reasoned preference of the child, based on the child's maturity and judgment.**

The Court did not interview the Children due to their tender age. Father was unable to accurately provide the birthdate of the youngest Child.

8. **The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.**

The photographic and video evidence presented by Father was intended to cast a shadow on Mother's parenting skills, but instead gave the Court further insight into Father and Father's motives. After leaving the residence with the babysitter, Father found seemingly random opportunities to come back over to the home and find Mother in compromising conditions. Father testified that "something told [him] to go check on [Mother] and the kids that night at 10:00pm." More likely, it was the video cameras that Father had installed inside the marital home during the marriage that he continued to monitor.

5

Father presented photos of slight bruises on the lower legs of the rambunctious toddlers and attempted to present it as abuse. The Court does not find the lower leg bruising to be the result of abuse.

Further, Father presented a video in which one of the Children was laughing and giggling as he wiggled around while Father attempted to capture a video image of a small bruise on the upper thigh/lower buttocks area of the Child that he alleged was caused by Mother hitting the Child with a wooden spoon for misbehaving. Father then accosted Mother about this and used offensive language while belittling Mother and calling her an abuser. Mother acknowledged that without Father around, she was left to handle a home and the rearing of two (2) young boys. The Court does not find the use of a wooden spoon and a swat to a rambunctious, misbehaving toddler's behind to be evidence of abuse, but rather of properly administered corporal punishment. It is especially understandable in a situation like the one before the Court where the Father has left the family home to take up a relationship with the babysitter and create a new family while negligently leaving the old family behind.

This factor favors Mother.

9. **Which party is more likely to maintain a loving, stable, consistent, and nurturing relationship with the child adequate for the child's emotional needs?**

Both parties express love for the Children and are now able to provide stability to them.

This factor does not favor either party.

10. **Which party is more likely to attend to the daily physical, emotional, developmental, educational, and special needs of the Child?**

Mother appears to be more in tune with the daily physical needs of the Children, evidenced by her efforts to ensure proper daycare and transportation thereto, as well as preparation for kindergarten of the older Child, including testing of his speech deficiencies, speaking to a school psychologist regarding emotional support classes, and developing his potty-training skills.

Father is doing more recently than he has in the past.

This factor favors Mother.

11. **The proximity of the residences of the parties.**
Father lives in Lancaster, Pennsylvania. Mother lives in Lancaster, Pennsylvania. The residences are approximately five (5) to ten (10) minutes apart when travelling by car.

12. **Each party's availability to care for the child or ability to make appropriate child-care arrangements.**

6

The parties utilize the same local daycare center since 2019. Father testified to an incident where poor communication between the parties led to conflict regarding pick-up times, but the proper schedule was eventually worked out between the parties. Both parties have the ability to make appropriate childcare arrangements.

This factor does not favor either party.

13. **The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another.**

Mother has a drug problem from which Father was unable to extract her. Instead of continuing to try to help Mother find a way out of her addiction, Father chose to leave the marriage and, unbeknownst to Mother, take up residence with the former family babysitter. While living apart from the date of their separation in late 2019 until filing for custody in August 2020, Father would visit the family home to check on Mother and the Children, monitor Mother's behavior by searching through her pocketbook and cell phone, retrieve knowledge helpful to his eventual custody case, monitor the cameras that he had set up to capture images from both within and without the home, have sex with Mother, and then return to his paramour and father a new baby with Ms. Vasquez. Essentially, Father monitored Mother's drug addiction to ensure that while she remained enslaved to it, it never got so bad that he had to do anything about it.

Mother historically abused heroin before meeting Father and somehow overcame heroin only to fall into a prescription medication addiction that included Percocet, Adderall, and Suboxone. Her continued use of the drugs led her to ruin her relationship with Father and cause him to become further distrusting of her sobriety and question her fidelity because of relationships she fostered to get the drugs. Her addiction led her to dangerous and inappropriate conduct to include operating a motor vehicle while under the influence of drugs and/or alcohol.

A confrontation between Mother and Ms. ▓▓▓▓ resulted when Mother fully learned of Father's infidelity and the resulting pregnancy in August of 2020 in which both women were charged with summary offenses and Mother pled guilty to harassment. Mother's subsequent admission to a mental health facility in August of 2020 brought Father's family neglect and Mother's drug addiction to a head, causing Father to finally act and file for custody in August 2020 and causing Mother to face her addiction.

The level of conflict is very high. To lower the conflict between the parties, they communicate mainly by text now. Further efforts to minimize interaction unrelated to custody would be beneficial for the parties at this time.

This factor does not favor either party.

14. **The history of drug or alcohol abuse of a party or member of a party's household.**

Father has no drug or alcohol issues.

7

When Mother first met Father, she was addicted to heroin. She gives Father credit for helping her to beat her heroin addiction, but by her own admission allowed temptation to draw her back into drug abuse with prescription medication. There was testimony presented that prior to her August 2020 admission to a mental health facility, she went to great lengths to acquire and abuse prescription medications even learning how to foil the Court's order for drug testing.

There is no way this Court can be sure that Mother is not still abusing prescription medications, but the testimony provided by Mother was compelling. The Court finds credible Mother's testimony that there was a turning point last September that caused her to make a complete change. She articulated her ability to put the relationship with Father behind her, to ask forgiveness for her actions against Ms. ███████ which she ultimately did receive, and to completely focus on what it takes to be a good Mother free from the influence of drugs. Only time will tell.

This factor favors Father.

15. **The mental and physical condition of a party or member of a party's household.**
Father has no diagnosed mental issues.

Mother suffers from depression and anxiety initiated by loss of a dog and the failed relationship with Father. She sees a psychiatrist one (1) time per month to manage her anxiety medication and sees a counselor more frequently.

This factor does not favor either party.

16. **Any other relevant factor.**
None.

V.  **CONCLUSION**

Upon consideration of these statutory factors, the Court finds it is in the best interest of the Children for the parties to continue sharing legal custody of the Children. Mother shall have primary physical custody of the Children and Father shall have partial physical custody of the Children as described in the attached order.

8

2IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CIVIL ACTION - CUSTODY

HERIBERTO VASQUEZ,      :
     Plaintiff,      :
     :
v.      :     No. CI-20-05334
     :
JENNIFER S. VASQUEZ-LU,      :
     Defendant.      :

### ORDER

AND NOW, this 12ᵗʰ day of May 2021, after a hearing in this matter, the Court sets forth the following custody order:

### I. LEGAL CUSTODY

Legal custody of E.S.V. (DOB 8/●/2016) and E.I.V. (DOB 5/●2018) ("Children") shall be shared by their parents, Plaintiff, ~~●●●●●●●~~ *H. V.* a/k/a ~~●●●●●●●~~ *H. V. L.* *J. V.-L.* ("Father") and Defendant, ~~●●●●●●●~~ ("Mother"). Each parent shall have access to the address and telephone number of the Children and the other parent. Both parents shall have the right to participate in the major decisions affecting the Children, including, but not limited to medical, religious, and educational decisions. Both parents shall have equal access to medical, dental, and school records. The parent scheduling a medical appointment shall ensure the other parent is aware of the appointment in a timely fashion. The parent enrolling the Children in an activity shall consult the other parent and shall ensure that the other parent is listed as a point of contact for the Children. Each parent must avail him or herself of the online means provided by the school to obtain information regarding school programs, events, meetings, teacher conferences, and evaluations.

## II.  PHYSICAL CUSTODY

1.    Mother shall have primary physical custody of the Children.

2.    Father shall have partial physical custody of the Children every other weekend from Friday after school/daycare to Monday at school/daycare. In addition, Father shall have partial physical custody of the Children every Wednesday after school/daycare until 8:00pm.

3.    The party obtaining custody shall provide transportation.

## III.  HOLIDAYS and VACATION

1.    In odd years, Father shall have July 4th. In even years, Mother July 4th. This holiday shall run from 6:00pm on July 3rd to 9:00am on July 5th.

2.    The parties shall share equally the Memorial Day and Labor Day holidays by agreement.

3.    Mother shall have custody on Mother's Day and Father shall have custody on Father's Day. This holiday shall be from 9:00am to 9:00pm.

4.    In odd years, Father shall have Thanksgiving Day, and Mother shall have the day after Thanksgiving. In even years, Mother shall have Thanksgiving Day, and Father shall have the day after Thanksgiving. The times for this holiday shall be from 9:00am to 9:00pm.

5.    The parties shall alternate Christmas as follows. In odd numbered years, Mother shall have from December 24th at noon until December 25th at noon and Father shall have from December 25th at noon until December 26th at noon. In even years, Father shall have from December 24th at noon until December 25th at noon and Mother shall have from December 25th at noon until December 26th at noon.

6.    Each party is allowed two (2) non-consecutive seven-day periods for vacation with thirty (30) days advanced written notice to the other party. These vacation periods must include the requesting party's weekend.

7.          Holiday periods of custody, vacation, and special occasion days shall take precedence over all regularly scheduled periods of custody. No party shall exercise a vacation period of custody that would result in the loss of the other party's holiday period of custody.

## IV.   OTHER PROVISIONS

1. Mother shall obtain a Blood 5-Panel Drug Test on or about the first week of the month for the next three (3) months at AnyLabTestNow and provide the results to Father.

2. The parties shall encourage the Children to love and respect the other parent. Neither party shall make or allow others to make any disparaging or derogatory remarks about the absent party in the presence of the Children.

3. The parties shall communicate respectfully with one another.

4. The parties shall begin using the co-parenting communication application AppClose for all communications. Neither party shall ask the other parent to communicate through a third party. Neither party shall ask the Children or a third party to communicate their needs or requests to the other parent.

5. Each party shall immediately notify the other by telephone of any serious illness or other emergency that may arise while the Children are in his or her custody.

6. Each party shall permit reasonable telephone and/or video access to the Children while the Children are in his or her custody. One call per day is reasonable. The Children shall be given privacy while speaking on the phone.

7. Each party is encouraged to accommodate the reasonable requests of the other party for alterations of any agreed upon schedule, as the circumstances and the best interests of the Children require.

The terms of this order may be modified at any time upon mutual consent of the parties or further order of Court.

## RELOCATION NOTICE

IF YOU ARE PROPOSING TO RELOCATE TO ANOTHER AREA WITH THE CHILDREN NAMED IN THIS CUSTODY ACTION, you must comply with the requirements of Section 5337 of the Pennsylvania custody law which includes sending notice of your proposed move to every other individual who has custody rights to the children and providing specific information concerning your relocation. The law may be found at 23 Pa. C.S.A. §5337. If you do not comply with the notice provision or provide the required information, the Court has the ability to consider your failure as an element in the custody or relocation decision.

BY THE COURT:

_____
JEFFREY A. CONRAD, JUDGE

ATTEST:

COPIES TO:   Osvaldo Espinosa, Esquire, Attorney for Plaintiff
             Stephen Grosh, Esquire, Attorney for Defendant

IN THE COURT OF COMMON PLEAS OF LANCASTER COUNTY, PENNSYLVANIA
CIVIL ACTION - CUSTODY

HERIBERTO VASQUEZ,
    Plaintiff,

    v.

JENNIFER S. VASQUEZ-LU,
    Defendant.

:
:
:
:   No. CI-20-05334
:   757 MDA 2021
:
:
:
:

## OPINION PURSUANT TO RULE 1925(a)
## OF THE PENNSYLVANIA RULES OF APPELLATE PROCEDURE

BY: CONRAD, J.

July 7, 2021

This Opinion is written pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure. Plaintiff and Appellant, *H. V.* ("Father") appeals the Trial Court's Order entered May 12, 2021, to the Pennsylvania Superior Court for the reasons stated in his Concise Statement of Matters Complained of on Appeal filed June 10, 2021.

The Trial Court's reasons for granting Father shared legal custody and partial physical custody of E.S.V. (DOB 8/●/2016) and E.I.V. (DOB 5/●/2018) are fully set forth in the Opinion accompanying the Order dated May 12, 2021, and are incorporated herein. The Trial Court submits this Opinion together with the May 12, 2021, Opinion and Order as fulfilling the requirements of Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure. It is this Court's position that the Child's best interests are served by the Order dated May 12, 2021, and the Order should be affirmed for the reasons set forth below.

## I.   PROCEDURAL HISTORY & FACTS

The Trial Court relies on the procedural history and statement of facts as outlined in the May 12, 2021, Opinion and Order. (Opinion Article I, II at 1-2). Subsequent to the entry of that

B

Opinion and Order on May 12, 2021, Father filed a timely Notice of Appeal on June 10, 2021, along with a Concise Statement of Matters Complaint of on Appeal and a Request for Transcript.

## II. ISSUES ON APPEAL

Defendant raises two (2) issues of alleged error:

1. Whether the Trial Court abused its discretion and ignored the best interests of the Children when the Court awarded primary physical custody to Mother.
2. Whether the Trial Court abused its discretion and ignored the best interests of the Children when the Court judged Father's ability to safeguard those interests.

(Concise Statement of Matters Complained of on Appeal, 6/10/2021).

## III. APPLICABLE STANDARD OF REVIEW

"[The appellate court's] standard of review of over a custody order is for a gross abuse of discretion," and it will only be found if the "trial court, in reaching its conclusion, overrides or misapplies the law, or exercises judgment which is manifestly unreasonable, or reaches a conclusion that is the result of partiality, prejudice, bias or ill will as shown by the evidence of record." *A.L.B. v. M.D.L.*, 239 A.3d 142, 147 (Pa. Super. 2020) quoting *Yates v. Yates*, 963 A.2d 535, 538 (Pa. Super. 2008) (citation omitted). An abuse of discretion in the context of child custody does not consist merely of an error in judgment. *K.B. II v. C.B.F.*, 833 A.2d 767, 770 (Pa. Super. 2003); *T.B. v. L.R.M.*, 753 A.2d 873, 881 (Pa. Super. 2000), order aff'd, 786 A.2d 913 (Pa. 2001).

The appellate court does not make independent factual determinations and therefore is bound by the trial court's factual findings if they are supported by competent evidence of record. *M.J.M. v. M.L.G.*, 63 A.3d 331, 334 (Pa. Super. 2013) (citation omitted). The appellate court does exercise its own independent deductions and inferences from facts as found by the trial court judge. *Anderson v. McVay*, 743 A.2d 472, 474 (Pa. Super. 1999) (citation omitted). Regarding issues of credibility and weight of the evidence, the appellate court must defer to the presiding trial judge

2

who viewed and assessed the witnesses first-hand. *J.M.R. v. J.M.*, 1 A.3d 902, 911 (Pa. Super. 2010) citing *Collins v. Collins*, 897 A.3d 466, 471 (Pa. Super. 2006). "Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record." *Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) quoting *Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa. Super. 2004).

"[T]he paramount concern in child custody proceedings is the best interest of the child." *Moore v. Moore*, 634 A.2d 163, 169 (Pa. 1993). In making the custody determination, the court's guiding principle is the best interests of the child, in accordance with the factors set forth in 23 Pa.C.S. § 5328 with weighted consideration given to those factors that affect the safety of the child. The test as to the best interests of the children when two parents are involved is evaluated on a scale that is initially weighed equally as to each parent. *Sawko v. Sawko*, 625 A.2d 692, 695 (Pa. Super. 1993). In a custody action, the particular circumstances of the case must be considered, and each case is to be decided on its own individual facts. *N.H.M. v. P.O.T.*, 947 A.2d 1268, 1273 (Pa. Super. 2008).

## IV. ANALYSIS

Whether the Trial Court abused its discretion and ignored the best interests of the Children when the Court awarded primary physical custody to Mother.

Father argues that Mother admitted having a drug addiction, had previously lied to the Court about her sobriety, had exposed the Children to her supplier, drove with the Children while visibly intoxicated, and failed to produce any evidence of her current sobriety other than her testimony at trial.

After considering the factors set forth in section 5328 (relating to factors to consider when awarding custody), the court may award any of the following types of custody if it is in the best interest of the child: ...(3) Partial physical custody.... 23 Pa. C.S. § 5323(a)(3).

3

The Trial Court relies on the rationale stated it its Opinion and Order dated May 12, 2021, and 23 Pa. C.S. § 5323(a)(3). Mother's drug use impacted several custody factors. (Opinion Art. IV, Factor 1 at 3, Factor 2 at 3-4, Factor 3 at 4, Factor 4 at 4, Factor 13 at 7, Factor 14 at 8, Factor 15 at 8). The Trial Court found Mother's testimony credible that she "remained drug-free since September 2020" and further noted that Mother was "doing better now and presents to the Court as drug-free." (Opinion Art. IV, Factor 1 at 3; *see also* N.T. at 126-29, 131, 156-57). The Trial Court fully considered Mother's drug use and included it as part of its total analysis of the sixteen (16) custody factors when awarding partial physical custody to Father.

<u>Whether the Trial Court abused its discretion and ignored the best interests of the Children when the Court judged Father's ability to safeguard those interests.</u>

Father argues that the Trial Court judged Father's ability to safeguard the Children's best interests based on his shortcomings as a husband and mischaracterized the testimony of both Mother and Father to that effect.

The Trial Court relies on the rationale stated it its Opinion and Order dated May 12, 2021. Additionally, Father testified that he was married to Mother as of the date of the hearing on May 3, 2021. (N.T. at 14). He further testified that they temporarily separated in July 2019 and finally separated in either October, November, or December of 2019 (N.T. at 12, 71-72). Subsequent to their separation, Father testified that he was sleeping with both Mother and the former babysitter, Ms. V. V. ████████, during the same time period. (N.T. at 37-38). He was going between his home with Ms. V. V. ████ and Mother's home daily. (N.T. at 37). Mother discovered that Father was in a relationship with their former babysitter in early August 2020. (N.T. at 115). Shortly thereafter, Father filed for custody of the Children on August 10, 2020. While the Trial Court does not condone Father's infidelity, it is aware that a child custody action is not the proper forum in which to punish an individual for conduct viewed as morally deficient.

4

*See Commonwealth ex rel. Grimes v. Grimes*, 422 A.2d 572 (Pa. Super. 1980). However, the combination of Father's infidelity, along with his continued deception to his wife, his in-home video surveillance of her after leaving the marital home, and his convenient increase in participation in the necessary parental duties only after wife discovered his affair and he filed for custody, does draw Father's character into question. Accordingly, after considering many factors as outlined in its Opinion and Order dated May 12, 2021, the Trial Court determined that the best interest of the Children was to award Father shared legal custody and partial physical custody.

## V.     CONCLUSION

The Trial Court submits this Opinion, along with the Trial Court's Opinion and Order of May 12, 2021, as the opinion required by Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure. For the reasons contained herein, the Trial Court respectfully requests that the Order of May 12, 2021, be affirmed.

RESPECTFULLY SUBMITTED:

JEFFREY A. CONRAD, JUDGE

ATTEST:

COPIES TO: Osvaldo Espinosa, Esquire, Attorney for Plaintiff and Appellant
Stephen W. Grosh, Esquire, Attorney for Defendant and Appellee

NOTICE OF ENTRY OF ORDER OR DECREE
PURSUANT TO PA. R.C.P. NO: 236
NOTIFICATION - THE ATTACHED DOCUMENT
HAS BEEN FILED IN THIS CASE
PROTHONOTARY OF LANCASTER CO., PA
DATE: 7-12-21

5